[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
This action concerns a dispute over a contract for the sale of a limousine and the transfer of both State D.O.T. permits and a Federal ICC permit for the operation of livery service.
The plaintiff had operated a livery service from headquarters CT Page 1430 based in New Milford. He held two D.O.T. permits, one for the livery operation of one vehicle and another for the operation of two vehicles for livery work between his headquarters and all points in Connecticut, and an ICC permit for operation in livery work to and from all points in the 48 contiguous states. He had two limousines and a van used in the business and only one limousine is involved in these proceedings. The defendants are a partnership which operated a limited livery service headquartered in Wolcott. They held a D.O.T. permit for such operation and also had an ICC permit.
The plaintiff decided to get out of livery work and was looking around for a buyer. He stopped operating sometime in June 1987. The named defendant became aware that the business was for sale and entered into negotiations, on behalf of the partnership, with the defendant. These negotiations culminated in a contract dated June 25, 1987 but executed by the plaintiff on August 11 and by the defendants on August 12.
Under the contract, the plaintiff was to transfer both the D.O.T. permits and the ICC permit to the defendants. All parties agreed that until the closing, the business of the plaintiff was to be carried on in the usual and ordinary manner and in conformance with applicable Federal, State and local requirements.
It is obvious that for the plaintiff to succeed in transferring the permits, it would be essential for the defendants to cooperate. For example, pursuant to State Regulation 16-1-98 a proposed transferee must submit material as to his fitness and character including statements from the chief of police. Under 16-325-2(3) he must demonstrate fitness and propriety to perform livery service, and D.O.T. has interpreted that to include a showing of financial ability. The named defendant prepared an application to D.O.T. for transfer of the permit for one vehicle and the plaintiff signed it and delivered possession to Chasse. There is a dispute about exactly when it was signed but in any event, it was not properly filed with D.O.T. until October 9, 1987. The letters of recommendation concerning Chasse were all dated during July, 1987 and the financial statement concerning him was dated July 31, 1987. The letters of reference concerning the co-defendant Langdeau were dated in October, 1987 and his financial statement was dated March 31, 1985. The application for transfer of the ICC permit was dated October 7, 1987 and was received by the ICC the next day. There was no evidence presented as to any action for the transfer of the D.O.T permit for two vehicles. It is apparent that the defendants did not do what only they could do to affect the transfers with anything like due diligence. CT Page 1431
However, the plaintiff was also remiss. Both the contract and Reg. 16-325-2(2) required him to continue to carry on the business with reasonable frequency and continuity but he closed operation in June. Under D.O.T. policy, cessation of operation for ninety days is ground for refusal of transfer. Exceptions can be made for serious reasons such as illness but no serious reason was demonstrated in this instance. The plaintiff simply wanted to get out of the business. The application to D.O.T. was withdrawn in November and its permit was never transferred.
With respect to the ICC permit, transfer was approved as of October 5, 1987 and this permit was in fact used by the defendants. It was subsequently revoked, apparently pursuant to 49 U.S.C. § 11349, which provides for a temporary permit of not more than 180 days during which the transferee must file proof of insurance, designation of agent for service of process and notice, and a tariff. It was not demonstrated that any of these requirements which are imposed on the defendants were complied with.
The contract, in paragraph 3, called for a down payment of $5,000, a further payment of $25,000 on transfer of title to the limousine, and a final payment of $10,000 upon the transfer of the D.O.T. and ICC permits. $30,000 has been paid and the limousine has been transferred. The ICC permit was transferred and the D.O.T. permit was not. I ascribe the latter to the fault of both sides, the plaintiff having terminated operating and the defendants having dragged their feet about doing what had to be done by them.
The ICC permit, not only having been transferred but also used by the defendants, they should pay for it. The contention of the defendants that an ICC permit has no value because anyone could get one for the asking is ludicrous. They already had an ICC permit so they must know what is involved in obtaining one, yet they retained the services of a practitioner who specializes in ICC practice to represent them in the transfer proceedings. As both sides agreed that both permits were worth $10,000 and the contract makes no allocation as between them, it is reasonable to conclude that each is worth $5,000.
Judgment may enter for the plaintiff in the amount of $5,000, costs to be taxed.
J. HEALEY, STATE TRIAL REFEREE.